# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

vs.

Case No. 3:21-mj-1269-JBT

SHAWN CURTIS ROBINSON Jr.

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.  On or about March 23, 2021, in the Middle District of Florida, the defendant,

> did knowingly and intentionally distribute a controlled substance, which violation involved 50 grams or more of methamphetamine, a Schedule II controlled substance, and is therefore punished under Title 21, United States Code, Section 841(b)(1)(A),

in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).  I further state that I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

Signature of Complainant
Chad Lifsey

Sworn to before me and subscribed in my presence,

on May 3, 2021                    at        Jacksonville, Florida

JOEL B. TOOMEY
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

I, Chad Lifsey, being duly sworn, depose and state:

## I.   INTRODUCTION

### Identity of Affiant

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been employed by ATF since May 2017. I am a graduate of the Federal Criminal Investigator Training Program and ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have successfully completed investigative training courses in the fields of narcotics investigations and firearms investigations in addition to conducting both state and federal felony level criminal investigations.

2.      Prior to my employment with ATF, I was employed as a police officer in Columbus, Georgia, for over ten years, where I served as a patrol officer, narcotics investigator, and a patrol supervisor. During my time as a narcotics investigator, I received specialized training to include drug enforcement, investigation of drug traffickers, drug recognition and terminology, clandestine labs investigator training, undercover operations, interviewing techniques, financial/money laundering training, and formal and on-the-job training in the area of electronic surveillance. I have participated in numerous drug-related investigations involving a variety of drugs. I am familiar with and have been involved in all standard methods of investigation, including management of confidential informants, visual surveillance,

1

electronic surveillance, informant interviews, interrogations, social media investigations, and undercover operations.

3.     The information in this affidavit is based on my personal knowledge as well as information, knowledge, and observations of other federal, state, and local law enforcement officers.  In recounting the events that took place during the controlled purchases discussed herein, my sources include debriefing of the undercover detective who conducted the controlled purchases as well as my review of surveillance audio and video and any written or otherwise recorded communications related to the controlled purchase.  This affidavit does not contain all information discovered during this investigation, rather only that believed necessary to provide a legal basis for the requested criminal complaint.

### Requested Criminal Complaint

4.     I submit this affidavit in support of a criminal complaint charging Shawn Curtis ROBINSON Jr. with violating the provisions of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A).

### Statutory Authority

5.     I am familiar with federal law including Title 21, United States Code, Section 841(a)(1), which prohibits the unlawful manufacture of, distribution of, or possession with intent to distribute a controlled substance.

2

## II.    PROBABLE CAUSE

A.    Debriefing of CD

6.    In March 2021, Nassau County Sheriff's Office (NCSO) Detective (Det.) Anthony Green received information about a methamphetamine trafficker known as "Slim." "Slim" was alleged to be operating out of Jacksonville, Duval County, Florida, within the Middle District of Florida.  Det. Green contacted me about initiating a joint investigation.

7.    On March 8, 2021, Det. Green and I met with a state cooperating defendant (CD)[1] at the Jacksonville Sheriff's Office (JSO), Crime Gun Intelligence Center (CGIC).  Prior to interview, I identified myself as an ATF Agent and allowed the CD an opportunity to view my credentials.  Det. Green advised the CD of his/her constitutional rights which were read from a NCSO advice of rights card. The CD waived his/her rights and agreed to answer questions.

8.    The CD reported the CD historically had purchased several ounces of methamphetamine per day from a black male known to the CD as "Slim."  The CD described "Slim" as a black male, approximately 6'00" tall, weighing 200 pounds, with dreadlocks in his hair.  The CD reported "Slim" drove a black or charcoal grey Chrysler 300 and stated that "Slim's" telephone number was 904-801-0009

---

[1] The cooperating defendant (CD)was in pre-trial incarceration at the John E. Goode Pre-trial Detention Facility at the time this information was obtained.  The statements made by the CD were made against his/her own penal interest and provided in exchange for prosecutorial consideration on behalf the CD's pending state drug case.

(recollected from the CD's memory). Det. Green was familiar with "Slim" from a prior NCSO investigation and allowed the CD an opportunity to view a Driver and Vehicle Information Database (DAVID) photograph of Shawn Curtis ROBINSON Jr. At that time, the CD confirmed ROBINSON and "Slim" were the same person. I note that a check of the Driver and Vehicle Information Database (DAVID) revealed that ROBINSON has a black 2012 Chrysler registered to him at 2818 Cherokee Circle, Jacksonville, Florida.

9.     The CD reported ROBINSON sold heroin, cocaine, and methamphetamine and had been introduced to the CD by a third party. The CD advised that ROBINSON was selling an ounce of methamphetamine for $450, a gram of heroin for $150, and an ounce of cocaine for $1,450.

10.    The CD stated ROBINSON stayed near King Street in Jacksonville, which was near a Burger King. The CD stated the residence was a duplex, blue in color with white trim, with the door being on the left hand side. A check of records from the Jacksonville Electric Authority (JEA) revealed that a Shawn Curtis ROBINSON has an active account at 2673 Forbes Street Apt. U, Jacksonville, Florida. The description and area provided by the CD is consistent with the 2673 Forbes Street address.

11.    The CD believed that he/she could introduce an undercover agent to ROBINSON from the jail. The interview was terminated and the CD was returned to the Duval County jail.

4

12.    On March 9, 2021, Det. Green, acting in a UC capacity, contacted ROBINSON by phone and set in motion a meeting and potential controlled purchase of two ounces of methamphetamine scheduled for March 11, 2021.

13.    I have reviewed ROBINSON's criminal history and obtained certified copies of his felony convictions.  According to those documents, ROBINSON has previously been convicted of Sale, Manufacture, Deliver, or Possession with Intent to Sell, Manufacture, or Deliver a controlled substance (2nd Degree Felony) on or about November 13, 2009.  ROBINSON has also been previously convicted in the Middle District of Florida for Possession with Intent to Distribute Cocaine Base, commonly known as "crack cocaine," a Schedule II controlled substance and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, on or about July 28, 2014.

B.    March 11, 2021, Controlled Purchase

14.    On March 11, 2021, at 1430 hours, ATF and NCSO met at a predetermined location and conducted a briefing about the anticipated controlled purchase of methamphetamine from ROBINSON.  U.S. Customs and Border Protection (CBP) Air and Marine Unit were assisting with aerial surveillance of the controlled purchase.  I provided Det. A. Green, who was acting in an undercover (UC) capacity, with $1,100 of previously recorded ATF Agent Cashier (AC) Funds.

15.    The UC contacted ROBINSON by phone at (904) 801-0009 and confirmed the deal location.  The UC proceeded toward 2818 E. Cherokee Circle. While in route to the location, the UC activated the video and audio recording at

5

approximately 1514 hours. CBP observed a black sedan parked at the residence but could not confirm if this was ROBINSON's black Chrysler 300. CBP activated their recording equipment at 1515 hours.

16.    At 1518 hours, the UC arrived at the deal location. At 1519 hours, ROBINSON arrived at the deal location in the black Chrysler 300. ROBINSON got into the passenger seat of the UC vehicle. The UC provided ROBINSON with $100 of ATF UC funds, which was a debt the CD had previously owed to ROBINSON. ROBINSON asked the UC if he needed a "zip," which I know to be a common street slang term meaning one ounce of a controlled substance. The UC advised that he needed two, referring to two ounces of methamphetamine. ROBINSON clarified that the UC needed two and stated it would probably be thirty minutes. ROBINSON stated he would tell his brother to bring it over. ROBINSON stated that he had about twenty-two (22) grams left and the UC should have let him know. ROBINSON and the UC agreed on the price of $500 per ounce of methamphetamine. ROBINSON exited the UC vehicle at that time.

17.    The UC described ROBINSON's clothing as blue shorts and a black hooded sweatshirt. Before leaving the deal location, ROBINSON made contact with the UC and advised that this location was his mother's house and she might arrive and ask what he was doing. ROBINSON instructed the UC to tell his mother that he works with ROBINSON and that he was there to buy some green, which I know

to be a common street slang term for marijuana. ROBINSON advised the UC that

he had to go to his house to get it (which I believe to refer to the methamphetamine).

18.     CBP observed ROBINSON leaving the deal location but lost sight of

him shortly after. At 1534 hours, the ground surveillance team consisting of

SA Jason Slosson, NCSO Det. D. Palecek, and I observed ROBINSON exiting the

the black Chrysler 300 on the street in front of 2673 Forbes Street. This is the

address where ROBINSON has an active JEA account.[2] ROBINSON had long

dreadlocks and matched the aforementioned clothing description provided by the

UC.

19.     Det. D. Palecek observed ROBINSON on the front porch of the

building speaking to the mail lady. At 1540 hours, ROBINSON left 2673 Forbes

Street and was followed by CBP to the Raceway Gas Station located at 7304 Lem

Turner Road, Jacksonville, Florida 32208. ROBINSON parked at a gas pump at

1549 hours. At 1604 hours, ROBINSON called the UC and advised that he was on

his way back; however, Det. Palecek could still see ROBINSON sitting in the black

Chrysler 300. At 1606 hours, ROBINSON's suspected source of supply (SOS)

arrived at the gas pumps close to the black Chrysler 300. Det. Palecek observed the

SOS vehicle to be a red Ford Mustang with a particular South Carolina license plate

---

[2] ATF has not been able to confirm which apartment door ROBINSON exited
during surveillance or a controlled purchase. ATF coordinated with United States
Postal Inspectors who surveilled the area of foot but were also not able to identify an
apartment labeled "U."

number. Det. Palecek observed ROBINSON get into the passenger side of the SOS vehicle. After a brief encounter, ROBINSON returned to the black Chrysler 300 and left the gas station at 1608 hours.

20.    I directed CBP to surveil the SOS vehicle while the ground surveillance unit attempted to maintain a visual of ROBINSON in the black Chrysler 300. At 1608, CBP reported the SOS vehicle pulled into a residence with red shutters located at 1356 Carvill Avenue. This residence was close to the Raceway Gas Station. CBP reported the subject in the SOS vehicle went inside.

21.    Meanwhile, agents lost sight of the black Chrysler 300 as he turned onto Interstate 95 South. Agents went back to 2673 Forbes Street but did not locate ROBINSON there. At 1620 hours, CBP advised they had reacquired the black Chrysler 300 at the initial deal location. The UC reported ROBINSON may have been selling drugs to another individual before arriving back at the UC vehicle. CBP reported ROBINSON went into the initial deal location at 1627 hours. At 1630, ROBINSON re-entered the UC vehicle. ROBINSON stated he was uncomfortable conducting narcotics transactions in a vehicle because he had been "fucked up" a few times. At that time, ROBINSON provided the UC a clear plastic sandwich style bag containing a quantity of suspected methamphetamine. The UC paid ROBINSON the additional $1,000 of ATF AC Funds for a total of $1,100. ROBINSON exited the UC vehicle and the UC left the scene.

8

22.    At 1635 hours, ROBINSON left the deal location in the black Chrysler 300 and was followed by CBP.  CBP observed that ROBINSON stopped at 1223 Cherry Street.  At 1642 hours, an individual wearing a red hat, bright pants, and dark shirt approached the target vehicle. At 1645 hours, this individual went back into the residence on Cherry Street and ROBINSON left the scene.  CBP lost a visual of ROBINSON at that time and the surveillance was terminated.

23.    Once at the debriefing location, I took custody of the bag containing the suspected methamphetamine sold to the UC by ROBINSON and transported it to the ATF office.  Upon arrival, SA Slosson and I processed and sealed the suspected methamphetamine for evidence.  The suspected methamphetamine weighed approximately 56.9 grams (with packaging) and field-tested positive for methamphetamine.

C.    <u>March 16, 2021, Controlled Purchase</u>

24.    On March 16, 2021, at 1230 hours, ATF and NCSO met at a predetermined location and conducted a briefing about the anticipated controlled purchase of methamphetamine from ROBINSON.  U.S. Customs and Border Protection (CBP) Air and Marine Unit were assisting with aerial surveillance of the controlled purchase.  I provided Det. Green, who was acting in an undercover (UC) capacity, with $1,000 of previously recorded ATF Agent Cashier (AC) Funds.  I directed SA Mallory Sonn to conduct surveillance at 1356 Carvill Avenue for the

9

suspected source of supply (SOS) driving the red Ford Mustang with a particular South Carolina license plate number.

25.     At 1232 hours, the UC contacted ROBINSON by phone at (904) 801-0009 to let ROBINSON know he was on the way.  ROBINSON did not answer but called the UC back at 1234 hours.  At 1253 hours, SA Sonn reported the SOS vehicle left the Carvill Avenue residence with an unknown black male driver. At 1555 hours, SA Sonn lost sight of the SOS vehicle near Rowe Avenue.

26.     Meanwhile, the UC proceeded to 2818 E. Cherokee Circle.  While en route to that location, the UC activated the video and audio recording at approximately 1300 hours and arrived at the location at 1310 hours.  The UC advised there was a vehicle at the Cherokee Circle residence bearing a particular North Carolina license plate number.  Based on registration information for the vehicle, it is a 2019 Dodge Ram 1500.

27.     The UC attempted to contact ROBINSON by telephone.  ROBINSON did not answer but called back immediately.  The UC advised ROBINSON that he had just arrived.  At 1313 hours, ROBINSON exited the Cherokee Circle residence and entered into the UC vehicle.  ROBINSON then provided the UC with two (2) clear plastic sandwich style bags containing a quantity of suspected methamphetamine. The UC paid ROBINSON $1,000 of ATF AC Funds. ROBINSON and the UC discussed prices for "boy," which I know to be a common street slang term for heroin.  ROBINSON asked what kind of prices the UC had

10

been getting.  ROBINSON then stated whenever it [heroin] came in they would talk.
ROBINSON said it would probably be $1,500 for a "zip."  At 1314 hours,
ROBINSON exited the UC vehicle, the UC left the scene, and ROBINSON returned
back inside the Cherokee Circle residence.  CBP reported ROBINSON was wearing
red shorts during the deal.

28.     At 1319 hours, CBP reported a white crew cab truck arrived at the
Cherokee Circle residence and three (3) occupants entered the Cherokee Circle
residence.  At 1322 hours, ground surveillance consisting of SA Jason Slosson,
NCSO Heather Rojas, and I drove past the house and observed the aforementioned
Dodge Ram 1500 with a particular North Carolina license plate number parked on
the street in front of the home and the white crew cab truck pulled into the driveway.
Surveillance of the Cherokee Circle residence was terminated at that time.

29.     I asked the CBP to fly back over 1356 Carvill Avenue to see if the SOS
had returned.  At 1327 hours, CBP confirmed the SOS vehicle was back at the
residence. Note: During this controlled purchase the suspected SOS from the
March 11, 2021, controlled never met up with ROBINSON while this operation was
ongoing.

30.     Once at the debriefing location, I took custody of the two (2) bags
containing the suspected methamphetamine sold to the UC by ROBINSON and
transported it to the ATF office.  Upon arrival, SA Smalls and I processed and sealed
the suspected methamphetamine for evidence.  The two bags of suspected

11

methamphetamine weighed approximately 57.6 grams (with packaging) and field-tested positive for methamphetamine.

D.   <u>March 23, 2021, Controlled Purchase</u>

31.   On March 23, 2021 at 1230 hours, ATF and NCSO met at a predetermined location and conducted a briefing about the anticipated controlled purchase of methamphetamine from ROBINSON.  U.S. Customs and Border Protection (CBP) Air and Marine Unit were assisting with aerial surveillance of the controlled purchase.  I provided Det. Green, who was acting in an undercover (UC) capacity, with $2,500 of previously recorded ATF Agent Cashier (AC) Funds.

32.   Prior to the briefing at 1229 hours, the UC contacted ROBINSON by phone at (904) 801-0009 to let him know that he was on the way.  ROBINSON advised that he was ready.

33.   At 1258 hours, the UC activated the audio and video recording equipment and proceeded to 2818 E. Cherokee Circle.  NSCO Det. A. Terry, who was on a surveillance position at 2673 Forbes Street, reported he observed ROBINSON walking an unknown black female to a blue Nissan.  Det. Terry advised ROBINSON returned to the porch and was wearing a tank top and red shorts.  At 1302 hours, Det. Terry advised ROBINSON was still inside the Forbes Street residence.  At 1309 hours, the UC arrived at 2818 E. Cherokee Circle.  The UC called ROBINSON and ROBINSON advised he was going to get a ride to the

residence but then asked the UC to come to 2673 Forbes Street. The UC left the Cherokee Circle residence and traveled to the Forbes Street residence.

34. At 1317 hours, the UC arrived at the Forbes Street residence and advised over the live audio feed that ROBINSON was coming out to meet him. At that time, CBP advised ROBINSON was exiting the house. At 1318 hours, ROBINSON entered the UC vehicle.

35. After ROBINSON finished a personal telephone call, the UC asked ROBINSON for a discounted price because of his volume. ROBINSON stated the dude (which I believe to refer to his methamphetamine source of supply) was taxing him. The UC stated he was looking for a "stick," which I know to be a common street slang term meaning firearm, and asked ROBINSON if he knew anybody like that. ROBINSON stated no.

36. ROBINSON provided the UC with four (4) clear plastic sandwich style bags containing a quantity of suspected methamphetamine and then the UC paid ROBINSON $2,000 of ATF AC Funds.

37. The UC advised ROBINSON that if he knows someone that has one (referring to a firearm for sale) to let him know. ROBINSON stated "I gotcha" and exited the vehicle. At 1320 hours, the UC left the scene and returned to the debriefing location. CBP reported ROBINSON returned to the Forbes Street residence. CBP stated there was a small red sedan on the backside of the Forbes

13

Street property.  Surveillance of the Forbes Street residence was terminated at 1345 hours.

38.     Once at the debriefing location, I took custody of the four (4) bags containing the suspected methamphetamine sold to the UC by ROBINSON.  I also took custody of the additional $500 of unused ATF AC funds.  I transported the evidence to the ATF office.  Upon arrival, SA Kristie Calhoun and I processed and sealed the suspected methamphetamine for evidence.  The four bags of suspected methamphetamine weighed approximately 115.6 grams (with packaging) and field-tested positive for methamphetamine.

39.     The methamphetamine purchased from ROBINSON during this controlled purchase was submitted to the Drug Enforcement Administration (DEA) laboratory for testing and analysis, including a determination of the quantity of actual methamphetamine present in the drugs purchased from ROBINSON.  According to a report from the DEA laboratory, the net weight of the drugs was 111.54 grams and they were 81% pure, resulting in a quantity of pure substance (that is, actual methamphetamine) of 90.34 grams.

E.     April 14, 2021, Firearm-Related Telephone Call

40.     On April 14, 2021, Det. Green, acting in an undercover capacity, placed a recorded telephone to ROBINSON.  The purpose of the call was to arrange a controlled purchase for the following day (which was April 15, 2021) and to inquire about a firearm purchase.

14

41.     On April 21, 2021, I reviewed the audio recording of the aforementioned call, which I have summarized below:

        a.     On April 14, 2021 at 1848 hours, the UC made contact with ROBINSON.  In substance, the UC advised ROBINSON that he would be coming to see him tomorrow to get two.  Two, in the context of this investigation, referred to two ounces of methamphetamine.

        b.     The UC asked ROBINSON if he found out about that other thing.  The other thing, in the context of this investigation, referred to a firearm.  ROBINSON stated "they" were taxing because it was "big stuff brand new out the box."  Based on the context of this investigation, I believe this comment to mean the firearm source to which ROBINSON was referring to was asking a high price for the sale of the firearm(s).

        c.     The UC and ROBINSON discussed pricing of the firearms generally and ROBINSON advised that he was going to inquire with his brother, check them out, and get back to the UC.  The call was concluded.

F.     April 15, 2021, Controlled Purchase

42.     On April 15, 2021, at 1330 hours, ATF and NCSO met at a predetermined location and conducted a briefing about the anticipated controlled

purchase of methamphetamine from ROBINSON.  I provided Det. Green, who was acting in an undercover (UC) capacity, with $1,700 of previously recorded ATF Agent Cashier (AC) Funds.  SA Mallory Sonn was directed to the Forbes Street residence to conduct surveillance on the apartment building for ROBINSON.

43.   Prior to the briefing at 1255 hours, the UC contacted ROBINSON by phone at (904) 801-0009 to let him know that he was about one hour out.  The UC reported ROBINSON advised him to go to the Cherokee Circle residence.

44.   At 1339 hours, SA John Leahy activated the audio and video recording equipment and proceeded to the Cherokee Circle residence. At approximately 1353 hours, the UC arrived at the Cherokee Circle residence. The UC verbalized that a Ford F350 with a particular Florida license plate number was parked at the residence.  At 1402 hours, the UC called ROBINSON, who advised that he was about to pull up.

45.   At 1416 hours, SA Sonn advised a blueish gray Kia SUV, left the parking lot of the Forbes Street residence.  SA Sonn advised the driver was female but was not able to determine if there was a passenger.  At 1420 hours, the UC advised a vehicle, possibly a van, arrived on Gilmore Street.  The UC stated ROBINSON exited this vehicle and was wearing a blue shirt and bleach-colored jeans.  The UC advised ROBINSON walked to the door of the Forbes Street residence and began knocking. The UC advised someone let ROBINSON inside.

16

46.    At 1424 hours, the UC reported the vehicle ROBINSON exited was still running and parked facing Cherokee Circle. At 1425 hours, ROBINSON exited the Cherokee Circle residence and entered into the passenger seat of the UC vehicle.

47.    ROBINSON provided the UC with two (2) clear plastic sandwich style bags containing a quantity of suspected methamphetamine and then the UC paid ROBINSON $1,000 of ATF AC Funds.

48.    The UC asked ROBINSON about the "dude" with the firearms still in the box. ROBINSON confirmed they were still in the box and stated he was going "holler" at him today. ROBINSON exited the UC vehicle and the UC left the scene and traveled to the debriefing location. At 1431 hours, SA Leahy and Group Supervisor (GS) Robert Bryson observed the Kia SUV still parked in front of the residence but were unable to get a tag.

49.    SA Slosson and I had left the area temporarily but returned to surveil the blue colored Kia SUV that was still parked and running on Gilmore Street. ROBINSON stood outside the driver's door of the vehicle speaking to the driver until the vehicle pulled away at 1440 hours. Agents attempted to obtain the tag number of the vehicle but lost it in traffic.

50.    Once at the debriefing location, I took custody of the two (2) bags containing the suspected methamphetamine that had been sold to the UC by ROBINSON. I also took custody of the additional $700 of unused ATF AC funds. I transported the evidence to the ATF office. Upon arrival, SA David Simmons and I

17

processed and sealed the suspected methamphetamine for evidence. The two bags of suspected methamphetamine weighed approximately 58.1 grams (with packaging) and field-tested positive for methamphetamine.

      G.    May 3, 2021, Arrest

      51.    On May 3, 2021, I was conducting surveillance at the Cherokee Circle residence when I observed ROBINSON in the driveway of the residence. I contacted Assistant United States Attorney Laura Cofer Taylor and advised her of these facts, and she authorized the arrest of ROBINSON. I then executed a probable cause arrest of ROBINSON in the driveway of the Cherokee Circle residence.

## III.  CONCLUSION

      52.    Based on the information in this Affidavit, I respectfully submit that there is probable cause to believe that on March 23, 2021, Shawn Curtis ROBINSON JR unlawfully distributed methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

I state that the above information is true and correct to the best of my knowledge, and I ask that the requested criminal complaint be issued.

Respectfully submitted,

Chad Lifsey, Special Agent
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS & EXPLOSIVES (ATF)

Subscribed and sworn to before me this __3__ day of May, 2021.

Joel B. Toomey
United States Magistrate Judge
Middle District of Florida

19