UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

12/28/21

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.  CASE NO. 3:21-cr-46-MMH-PDB

SHAWN CURTIS ROBINSON Jr.

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Karin Hoppmann, Acting United States Attorney for the Middle District of Florida, and the defendant, SHAWN CURTIS ROBINSON Jr., and the attorney for the defendant, Darcy Galnor, mutually agree as follows:

**A.  Particularized Terms**

1.  Count(s) Pleading To

The defendant shall enter a plea of guilty to distributing 50 grams or more of actual methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), a lesser included offense of Count Three of the Indictment. Count Three charges the defendant with distributing fifty grams or more of actual methamphetamine, a Schedule II controlled substance, after having a final conviction for a serious drug felony, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 851.

Defendant's Initials SR     AF Approval [initials]

2.  Minimum and Maximum Penalties

The charge to which defendant is pleading carries a minimum mandatory penalty of not less than ten years of imprisonment up to life, a fine of not more than $10 million, or both a term of imprisonment and a fine, a term of supervised release of at least five years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum sentence of not more than five years of imprisonment as well as the possibility of an additional term of supervised release.

3.  Alleyne v. United States and Apprendi v. New Jersey

Under Alleyne v. United States, 570 U.S. 99 (2013), and Apprendi v. New Jersey, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of not less than ten years of imprisonment and a maximum sentence of life as to Count Three because the following facts have been admitted by the defendant and are established by this plea of guilty:

The quantity of actual methamphetamine the defendant distributed was more than 50 grams.

4.  Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

Defendant's Initials _SR_                    2

The elements of Count Three are:

 First: The defendant distributed methamphetamine, which is a Schedule II controlled substance;

 Second: The defendant did so knowingly and intentionally; and

 Third: The quantity of actual methamphetamine distributed by defendant was 50 grams or more.

5. Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant, Counts One, Two, and Four, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6. Section 851 Enhancement To Be Withdrawn

If the Court accepts this plea agreement, the United States agrees to withdraw the Information under 21 U.S.C. § 851 that triggers an enhancement of the applicable statutory minimum penalty as a result of the defendant's prior criminal history. The defendant understands that if the Court does not accept this plea agreement, if the defendant is permitted to withdraw his plea of guilty, or if for any other reason his plea of guilty is vacated or set aside, the United States is not bound by this agreement and may re-file an information under 21 U.S.C. § 851 at its discretion.

7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States

Defendant's Initials _SR_   3

will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees. Specifically, on August 24, 2021, the

Defendant's Initials SR

4

Bureau of Alcohol, Tobacco, Firearms & Explosives completed an administrative forfeiture of the following assets which it alleges are proceeds of the defendant's drug trafficking activities:

    a.    $4,600.00 in United States currency; and

    b.    $6,980.00 in United States currency.

The defendant did not contest the administrative forfeiture of these assets and expressly waives any right he may have to challenge such forfeiture.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

Defendant's Initials _SR_          5

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant's Initials _SR_   6

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.    Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution

Defendant's Initials SR            7

to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials _SR_                    8

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or

Defendant's Initials  SR

9

indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court,

Defendant's Initials _SR_         10

with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.  <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

Defendant's Initials SR

11

the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials _SR_   12

satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and

Defendant's Initials SR          13

were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 17th day of December ~~November~~ 2021.

KARIN HOPPMANN
Acting United States Attorney

_____
SHAWN CURTIS ROBINSON Jr.
Defendant

_____
LAURA COFER TAYLOR
Assistant United States Attorney

_____
DARCY GALNOR
Attorney for Defendant

_____
FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville Division

Defendant's Initials __SR__

14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 3:21-cr-46-MMH-PDB

SHAWN CURTIS ROBINSON Jr.

## PERSONALIZATION OF ELEMENTS

**As to Count Three**:

1. On or about March 23, 2021, in Duval County, in the Middle District of Florida, did you distribute methamphetamine, a Schedule II controlled substance?

2. Did you do so knowingly and intentionally?

3. Was the quantity of actual methamphetamine you distributed 50 grams or more?

Defendant's Initials SR

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:21-cr-46-MMH-PDB

SHAWN CURTIS ROBINSON Jr.

## FACTUAL BASIS

In March 2021, a cooperating defendant ("CD") provided information to law enforcement, including a detective for the Nassau County Sheriff's Office ("NCSO") and the Bureau of Alcohol, Tobacco, and Firearms ("ATF") regarding the drug trafficking activities of a person later identified as Shawn Curtis ROBINSON Jr. According to the CD, he had previously purchased several ounces of methamphetamine from ROBINSON per day. The CD provided a phone number for ROBINSON. A detective for NCSO was able to make contact with ROBINSON via the phone number provided by the CD and arranged to purchase two ounces of methamphetamine from ROBINSON.

On March 11, 2021, the NCSO detective, acting in an undercover capacity ("UC") conducted a controlled purchase of methamphetamine from ROBINSON. The controlled purchase was conducted at 2818 East Cherokee Circle, in Jacksonville, Duval County, Florida, within the Middle District of Florida. During the controlled purchase, ROBINSON entered the UC's vehicle and provided the UC

Defendant's Initials  SR

with a clear plastic sandwich bag containing methamphetamine, and the UC paid ROBINSON $1000 of ATF purchasing funds. In addition, during their interactions the UC paid ROBINSON $100 to settle a debt that the CD owed to ROBINSON. After the controlled purchase, the UC provided the methamphetamine he purchased from ROBINSON to ATF, and it was placed into evidence. The methamphetamine was later submitted to the Drug Enforcement Administration laboratory for testing, which identified the substance sold by ROBINSON as consisting of 55.77 grams of methamphetamine that was 86% pure, equating to 47.96 grams of actual methamphetamine.

On March 16, 2021, the UC conducted a second controlled purchase of methamphetamine from ROBINSON at the Cherokee Circle residence. During the controlled purchase, ROBINSON entered the UC vehicle and provided the UC with two clear plastic sandwich bags containing methamphetamine. The UC paid ROBINSON $1000 of ATF purchasing funds for the methamphetamine. After the controlled purchase, the UC provided the methamphetamine he purchased from ROBINSON to ATF, and it was placed into evidence. The methamphetamine was later submitted to the Drug Enforcement Administration laboratory for testing, which identified the substance sold by ROBINSON as consisting of 55.58 grams of methamphetamine that was 90% pure, equating to 50.02 grams of actual methamphetamine.

Defendant's Initials _SR_    17

On March 23, 2021, the UC conducted a third controlled purchase of methamphetamine from ROBINSON. During this controlled purchase, the UC met with ROBINSON at 2673 Forbes Street, Jacksonville, Duval County, Florida, within the Middle District of Florida. ROBINSON entered the UC vehicle and provided the UC with four clear plastic sandwich bags of methamphetamine. ROBINSON and the UC discussed a possible transaction for a firearm, but ROBINSON indicated he did not know anyone who would sell one. ROBINSON stated that he would let the UC know if he found a lead on a firearm. The UC paid ROBINSON $2000 of ATF cashier funds for the methamphetamine. After the controlled purchase, the UC provided the methamphetamine he purchased from ROBINSON to ATF, and it was placed into evidence. The methamphetamine was later submitted to the Drug Enforcement Administration laboratory for testing, which identified the substance sold by ROBINSON as consisting of 111.54 grams of methamphetamine that was 81% pure, equating to 90.34 grams of actual methamphetamine.

On April 14, 2021, the UC placed a recorded phone call to ROBINSON in order to arrange for an additional purchase of methamphetamine and follow up regarding a possible firearm purchase. ROBINSON indicated that he did have a lead on a firearm, but that it would be expensive because it was "big stuff brand new out the box." ROBINSON advised he would get back to the UC regarding pricing on a firearm.

Defendant's Initials  *SR*   18

On April 15, 2021, the UC conducted a fourth controlled purchase of methamphetamine from ROBINSON at the Cherokee Circle residence. ROBINSON entered the passenger seat of the UC vehicle and provided the UC with two clear plastic sandwich bags containing methamphetamine; the UC paid ROBINSON $1000 of ATF cashier funds. ROBINSON indicated to the UC that he would get in touch with the individual who had firearms. After the controlled purchase, the UC provided the methamphetamine he purchased from ROBINSON to ATF, and it was placed into evidence. The methamphetamine was later submitted to the Drug Enforcement Administration laboratory for testing, which identified the substance sold by ROBINSON as consisting of 56.09 grams of methamphetamine that was 100% pure, equating to 56.09 grams of actual methamphetamine.

On May 3, 2021, ROBINSON was arrested by agents with ATF outside of the Cherokee Circle residence. Prior to the arrest, the UC and ATF agents conducted surveillance of the residence, and observed a man wearing a red shirt and red shorts loading items from the Cherokee Circle residence into a Ford F350 truck parked in the driveway. ROBINSON was observed standing on the porch of the residence smoking and talking to the man wearing the red shirt and red shorts. Agents then observed ROBINSON enter the passenger seat of the Ford F350 truck and close the door. Agents then made contact with ROBINSON, removed him from the Ford F350 truck, and handcuffed him. At that time, ROBINSON was wearing only boxer shorts. Agents smelled a strong odor of marijuana emanating from the Ford F350

Defendant's Initials SR                    19

truck. A search of the Ford F350 truck revealed a shoebox containing $6980 in US currency, sandwich bags containing suspected alpha-PVP, marijuana, and cocaine. The man wearing the red shirt and red shorts voluntarily escorted an agent inside of the Cherokee Circle residence to obtain clothing for ROBINSON. A pair of shorts that were obtained for ROBINSON were found to contain $4600 in US currency. ROBINSON was advised of his Miranda rights and agreed to speak with agents. ROBINSON admitted to having sold methamphetamine to the UC.

Defendant's Initials SR            20